**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BLACK BUFFALO 3D CORPORATION | Case No. 25-12270 (TMH) |
| Debtor.[1] | **Objection Deadline: October 5, 2026, at 4:00 p.m. (ET)**<br>**Hearing Date: October 14, 2026, at 11:00 a.m. (ET)** |

# DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROCEDURE FOR THE DISMISSAL OF THE DEBTOR'S CHAPTER 11 CASE; (II) APPROVING FINAL PROFESSIONAL FEE PROCESS; AND (III) GRANTING RELATED RELIEF

Black Buffalo 3D Corporation (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (this "Chapter 11 Case"), through its undersigned counsel, respectfully moves (this "Motion") as follows:

## PRELIMINARY STATEMENT

1. The Debtor commenced this Chapter 11 Case to preserve its business as a going concern and maximize the value of its assets through the sale of substantially all of its assets. The Debtor achieved these goals when, on June 10, 2026, the Court entered the *Order (A) Approving the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving Assumption and Assignment of Certain Executory Contracts and Leases, and (C) Granting Related Relief* [D.I. 119] (the "Sale Order"), and on July 10, 2026, the Debtor closed the sale of substantially all of its assets (the "Sale").

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Black Buffalo 3D Corporation (5412). For purposes of this chapter 11 case, the Debtor's service address is 1071 Hudson Street, Union, NJ 07083.

2. After carefully considering alternatives, the Debtor has determined that dismissal is the most efficient and cost-effective method of concluding this Chapter 11 Case. Confirmation of a plan of liquidation would be lengthy, expensive, and—under the circumstances—likely infeasible. Conversion to a case under chapter 7 of the Bankruptcy Code (as defined herein) will merely add another layer of administrative costs with no attendant benefits. There is minimal activity left to be done in this Chapter 11 Case, as all claims and causes of action belonging to the estate, including avoidance actions under chapter 5 of the Bankruptcy Code, have been sold to the purchaser, Black Buffalo JVCo LLC (the "Purchaser"). As a result, there are no remaining claims or causes of action for the Debtor to pursue and no remaining material assets for a chapter 7 trustee to liquidate and distribute. As discussed below, dismissal is authorized by the Bankruptcy Code and is the most practical and economic course given the circumstances of this Chapter 11 Case.

3. In connection with the dismissal of this Chapter 11 Case, the Debtor will not make any distributions to creditors, administrative or otherwise, unless provided for by order of this Court. Any remaining assets of the Debtor will be used to effectuate the wind down of the Debtor's Chapter 11 Case and affairs.

## RELIEF REQUESTED

4. The Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A** (i) approving procedures for dismissal of the Chapter 11 Case, (ii) approving procedures for the filing and approval of Final Fee Applications (as defined herein); (iii) providing that all prior orders, stipulations, settlements, rulings, orders, and judgments of the Court during this Chapter 11 Case remain in full force and effect and are otherwise unaffected by the dismissal of this Chapter 11 Case; (iv) terminating the retention of professionals employed in this Chapter 11 Case pursuant to sections 327 and 328 of the Bankruptcy Code (each, a

"Professional"); and (v) authorizing the Debtor to take all reasonably necessary steps to dissolve and/or terminate under applicable state law.

## JURISDICTION

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Chapter 11 Case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6. The Debtor consents pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. The statutory bases for the relief requested herein are sections 105(a), 305(a), 349, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), and Local Rule 1017-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### A. General Background

8. On December 24, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to manage

its assets as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in this Chapter 11 Case.

9. Additional detail regarding the Debtor, its business, and the events leading to the commencement of this Chapter 11 Case is set forth in the *Declaration of George Perry in Support of Chapter 11 Petition and First Day Motions* [D.I. 9].

**B. Sale Under the Asset Purchase Agreement**

10. On June 10, 2026, the Court entered the Sale Order approving the Sale pursuant to an Asset Purchase Agreement, dated as of May 28, 2026 (as amended, modified, and/or supplemented from time to time, the "APA").[2]

11. Consistent with the terms of the APA, the Debtor and the Purchaser have concluded the process of assuming and assigning unexpired leases of nonresidential real property and executory contracts. In addition, none of the Debtor's employees remain employed by the Debtor (certain of whom are now employed by the Purchaser). There are no remaining unresolved objections to the Sale by landlords, contract counterparties or any other party in interest.

**C. The Debtor's Remaining Assets and Liabilities**

12. All claims and causes of action belonging to the estate, including avoidance actions under chapter 5 of the Bankruptcy Code, have been sold to the Purchaser. As a result, there are no remaining claims or causes of action for the Debtor to pursue and no remaining material assets for a chapter 7 trustee to liquidate and distribute. *See* APA, § 2.1(6)(v).

[2] A copy of the APA was attached as **Exhibit A** to the *Notice of Cancellation of Auction and Designation of Successful Bidder* [D.I. 116].

13. Pursuant to the APA, the Debtor's remaining assets (collectively, the "Remaining Assets"), which are of little to no economic value, consist of:[3]

(a) all cash and cash equivalents and any cash collateral posted in respect of bonds and permits (excluding prepaid expenses and deposits relating to the Business and any cash collateral posted in respect of Purchased Assets and any amounts received in respect of or proceeds from any Purchased Assets following the date of this Agreement);

(b) rights, claims, causes of action and credits to the extent exclusively relating to any Excluded Asset or Excluded Liability, including any such item to the extent arising under any guarantee, warranty, indemnity or similar right in favor of a Debtor solely in respect of an Excluded Asset or Excluded Liability;

(c) any shares of capital stock or other equity interest in the Debtor and any of its subsidiaries or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interest of the Debtor, other than (i) the Debtor's shares in HISYS Co., Ltd. and (ii) any shares of capital stock or other equity held by the Debtor including in any subsidiary of the Debtor to the extent identified by the Purchaser as a Purchase Asset prior to Closing;

(d) any minute books, stock ledgers, corporate seals and stock certificates of the Debtor, and other similar books and records that the Debtor is required by Law to retain, including Tax Returns and financial statements, except that the Debtor will provide copies of all or any portions of such retained books and records requested by the Purchaser;

(e) all post-petition adequate assurance deposits provided to utilities and any deposits provided to suppliers or service providers to the Debtor on a prepetition or post-petition basis (collectively, the "Chapter 11 Deposits") solely to the extent relating to an Excluded Asset or Excluded Liability;

(f) subject to Section 2.6, any Purchased Contract that requires a consent of a third party to be assumed and assigned hereunder as to which, by the Closing Date, such consent has not been obtained and for which the Bankruptcy Court has not entered an

[3] Capitalized terms used in this paragraph shall have the meanings ascribed to them in the APA.

order approving such assumption and assignment notwithstanding the lack of third party consent;

(g) refunds, credits and rebates of Taxes for any period or portion thereof ending on or before the Closing Date;

(h) all rights in or to assets leased by the Debtor except to the extent the Liabilities under the associated lease are assumed by Purchaser and such lease is assigned to Purchaser as a Purchased Contract;

(i) all rights of the Debtor under the APA or the other Transaction Documents; and

(j) any other assets, properties or rights expressly excluded by the Purchaser by notice to the Debtor delivered prior to Closing and referencing Section 2.2(j) of the APA.

APA, § 2.2.

14. As of September 4, 2026, the Debtor's cash on hand is approximately $246,000. The DIP Lender, who is also the Purchaser, holds a lien on that cash. Any cash remaining after payment of all allowed Professional Fees (as defined below) will be remitted to the DIP Lender. Therefore, there will be no cash available for distribution to other creditors. Additionally, there are no remaining assets in the Debtor's estate that are not subject to the APA.

## BASIS FOR RELIEF

### A. Dismissal of This Chapter 11 Case is Appropriate and Should be Approved.

15. Section 1112(b)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). Conversion or dismissal of a case is mandatory. *See Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) ("The amendments to section 1112 limit the Court's

discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause.") (citing *In re 3 Ram, Inc.*, 343 B.R. 113, 118 (Bankr. E.D. Pa. 2006)); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)."); *see also* H.R. Rep. No. 109-31(I), at 442, reprinted in 2005 U.S.C.C.A.N. 88, 94 (stating that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances.").

16. For the reasons set forth below, the Debtor submits that the Court should dismiss this Chapter 11 Case because cause exists. Further, dismissal—rather than conversion to a case under chapter 7—is in the best interests of the Debtor, its creditors, and its estate.

**B. Cause Exists to Dismiss this Chapter 11 Case.**

17. Section 1112(b)(4) of the Bankruptcy Code outlines a non-exhaustive list of sixteen (16) grounds constituting "cause" for dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(6); *Gateway Access*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'" (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991))); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not." (citation omitted)).

18. One such ground is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *Id.* § 1112(b)(4)(A). A "reasonable likelihood of rehabilitation" has been interpreted as the "debtor's ability to restore the viability of its business." *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) ("Because the debtors here intended to liquidate their assets rather than restore their business operations, they had no reasonable likelihood of rehabilitation." (internal citations omitted)).

19. In addition to the non-exhaustive list outlined by section 1112(b)(4), courts may consider the "totality of the circumstances" in determining whether sufficient cause exists. *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (the factors enumerated in section 1112(b)(4) are "not exhaustive and . . . a court may consider whether other facts and circumstances qualify as 'cause.'"). Courts have found sufficient cause where a debtor is unable "to effectuate a plan" or where there is not a "reasonable probability of successful reorganization within a reasonable period of time." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161–62 n.10 (3d Cir. 2012) ("[T]he 'inability to effectuate a plan' remains a viable basis for dismissal[.]"); *see also Bronson v. Thompson (In re Bronson)*, BAP No. AZ-12-1320-MkDJ, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should exercise its discretion under § 1112(b) to dismiss or convert."). Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the core for a workable plan of reorganization does not exist. *In re Preferred Door*, 990 F.2d 547, 549 (10th Cir. 1993) (citing *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989)).

20. Here, the Debtor has ceased operations and liquidated substantially all of its assets through the Sale, leaving no business left to reorganize. *See Loop Corp.*, 379 F.3d at 516. The

Debtor therefore cannot confirm a plan of liquidation because the Remaining Assets have no value and are insufficient to pay all administrative and priority claims in full as required by section 1129(a)(9) of the Bankruptcy Code. Thus, there is no point in incurring additional administrative expenses in connection with an unconfirmable plan. Accordingly, the Debtor submits that cause exists to dismiss this Chapter 11 Case.

**C. Dismissal Is in the Best Interests of the Debtor's Estate and its Creditors.**

21. Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court should evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and the estate. *See* 11 U.S.C. § 1112(b); *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995).

22. Courts consider a variety of factors in determining whether to dismiss or convert, including:

(a) whether some creditors received preferential payments, and whether equality of distribution is better served by conversion rather than dismissal;

(b) whether there would be a loss of rights granted if the case were dismissed;

(c) whether the debtor would simply file a further case upon dismissal;

(d) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

(e) in assessing the interest of the estate, whether conversion or dismissal maximizes the estate's value as an economic enterprise;

(f) whether any remaining issues would be better resolved outside of the bankruptcy forum;

(g) whether the estate consists of a "single asset";

(h) whether the debtor engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

(i) whether a plan has been confirmed and whether any property remains in the estate to be administered; and

(j) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*See, e.g.*, *In re Ramallo Bros. Printing, Inc.*, Case No. 14-01948, 2015 WL 3862970, at *2 (Bankr. D.P.R. Jun. 22, 2015) (citing *In re Costa Bonita Beach Resort*, 513 B.R. 184 (Bankr. D.P.R. 2014)); *In re Helmers*, 361 B.R. 190, 195 (Bankr. D. Kan. 2007).

23. A number of these factors weigh in favor of dismissal of this Chapter 11 Case. First, the Debtor has not made preferential payments throughout this Chapter 11 Case. Rather the Debtor has only made payments in accordance with orders of this Court. Accordingly, conversion would not serve any beneficial purpose here with respect to the equality of distribution.

24. Second, the Debtor will not file a further case upon dismissal. Given that the Debtor has consummated the Sale of substantially all of its assets and ceased operations, there is no substantive estate to seek further relief under the Bankruptcy Code.

25. Third, there are essentially no assets for a chapter 7 trustee to administer or pursue. As discussed, the Debtor has liquidated substantially all of its assets in connection with the Sale, including all chapter 5 claims and causes of action. Any Remaining Assets are of no material value. A chapter 7 trustee would therefore incur administrative expenses without any attendant benefit to the estate which, in all likelihood, have no source of repayment.

26. Fourth, dismissal maximizes the estate's value as an economic enterprise by minimizing the costs of winding down the Debtor's affairs.

27. Fifth, there are no allegations of misconduct or bad faith justifying the need for appointment of a chapter 7 trustee to protect the interests of any party, and there are no environmental or safety concerns which must be supervised.

28. Accordingly, it is in the best interest of the estate and its creditors to dismiss this Chapter 11 Case. Dismissal eliminates the continued accrual of any administrative expense obligations and brings closure to this Chapter 11 Case in a timely and efficient manner. As such, the Debtor has met its burden of showing cause exists to dismiss, rather than convert, this Chapter 11 Case under section 1112(b) of the Bankruptcy Code.

**D. Alternatively, Dismissal of this Chapter 11 Case Is Warranted Under Section 305(a) of the Bankruptcy Code.**

29. Section 305(a) permits dismissal at any time if "the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). Dismissal under section 305(a) requires that both creditors and the debtor benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate. *See In re AMC Investors, LLC*, 406 B.R. 478, 487–88 (Bankr. D. Del. 2009); *In re Globao Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (Bankr. S.D.N.Y. 2004) (citing *In re Eastman*, 188 B.R. 621, 624–25 (B.A.P. 9th Cir. 1995)). Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the court. *In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered, including: (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *AMC Investors*, 406 B.R. at 488.

30. As discussed above, cause exists for dismissal. Under the circumstances, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtor's creditors or its estate. Dismissal provides the most efficient, cost-effective method of effectuating the wind down of the Debtor's estates. Thus, dismissal is in the best interest of the Debtor and its creditors pursuant to section 305(a) of the Bankruptcy Code.

**E. The Court Should Grant the Related Relief.**

**(i) The Court Should Approve Procedures for Final Fee Applications.**

31. The Debtor requests that the Court schedule a final fee hearing (the "Final Fee Hearing") after a hearing on this Motion. Therefore, the Debtor further requests that the Court establish a deadline for the submission of a final fee application (the "Final Fee Application") for fees incurred (the "Professional Fees") by its sole retained Professional, Ballard Spahr LLP, from the Petition Date up to and including the date this Chapter 11 Case is dismissed (the "Dismissal Date"), as well as an objection deadline.

32. To the extent there are any unused funds remaining in the Debtor's accounts after the Final Fee Application has been heard and allowed Professional Fees have been paid, the Debtor requests authority to further reserve such funds necessary to fund the wind down of the Debtor's affairs.

**(ii) The Court Should Provide for Continued Binding Effect of Prior Stipulations, Settlements, Rulings, Orders and Judgments.**

33. The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. *See* 11 U.S.C. § 349(b). The Court may, however, "for cause, order[] otherwise . . . ." *Id.* The United States Supreme Court has noted that section 349(b) "appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'"

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 466 (2017) (quoting H. R. Rep. No. 95-595, p. 338 (1977)).

34. Here, the Debtor has sold substantially of its assets to a good-faith purchaser as set forth in the Sale Order. Vacating a sale order in connection with dismissal of a chapter 11 case "would be directly contrary to that policy of finality" associated with bankruptcy sales. *In re KG Winddown, LLC*, 628 B.R. 739, 749 n.8 (Bankr. S.D.N.Y. 2021). Therefore, the Court may provide for the survival of the Sale Order notwithstanding dismissal to "eliminate many unnecessary ambiguities" such as which provisions of the Sale Order survive post-dismissal. *Id.* ("[E]ven if such an order is not required, approval would eliminate many unnecessary ambiguities. 'Comfort orders' can be appropriate in many circumstances, including this one."). The Debtor submits that such an order is appropriate in this Chapter 11 Case and that cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court during the Chapter 11 Case to be given continued effect, notwithstanding the requested dismissal, in order to preserve the validity of the Sale Order.

**(iii) <u>The Court Should Authorize and Direct the Dissolution of the Debtor Following Dismissal of the Chapter 11 Case.</u>**

35. The Debtor requests that, upon dismissal of this Chapter 11 Case, the Debtor shall be dissolved and wound up as a corporate entity for all purposes other than winding up its affairs (including, without limitation, filing final tax returns and disposing of employee or business records) without the need for further action by this Court or the Debtor pursuant to 8 Del. Code § 275 or other applicable state dissolution processes. Such relief has been granted under similar circumstances by this Court. *See, e.g.*, *In re Craftworks Parent, LLC*, Case No. 20-10475 (BLS) (Bankr. D. Del. Oct. 23, 2020) [D. I. 756] ("The Debtors listed in this paragraph . . . shall be deemed dissolved pursuant to applicable state law, without the need for further action by the

Debtors or the Court and without the need for further corporate action, including by the board of directors of the Debtors, and the Debtors shall not be required to pay any taxes or fees to cause such dissolution."); *In re HRHI Wind-down, LLC*, Case No. 25-10674 (TMH) (Bankr. D. Del. Dec. 31, 2025) ("As soon as reasonably practicable after entry of this Dismissal Order, without the need for further action on the part of this Court, to the extent not previously dissolved, the Debtors are authorized to dissolve their corporate entities in accordance with applicable state law, and the Debtors shall not be required to pay any taxes or fees to cause such dissolution.").

36. Such relief has also been granted by this Court as a part of plans of reorganization and plans of liquidation. *See, e.g.*, *In re ATLS Acquisition, LLC*, Case No. 13-10262 (LSS) (Bankr. D. Del. Aug. 15, 2014) [D.I. 1502] ("On the Effective Date, and without the need for any further order of the Bankruptcy Court, action or formality which might otherwise be required under applicable non-bankruptcy laws, the Debtors shall be deemed dissolved without the need for any filings with the Secretary of State or other governmental official in each Debtors' respective state of incorporation or formation."); *see also In re Universal Cooperatives, Inc.*, Case No. 14-11187 (MFW) (Bankr. D. Del. June 17, 2015) [D.I. 1039].

37. The Debtor is no longer operating a business and has no material assets other than cash. Upon dismissal of the Chapter 11 Case, the Debtor's continued corporate existence will serve no purpose. It is therefore appropriate for the Court to direct the dissolution of the Debtor.

## NOTICE

38. The Debtor will provide notice of this motion to: (a) the U.S. Trustee; (b) counsel to the debtor-in-possession lender; (c) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (d) all known creditors of the Debtor (collectively, the "Notice Parties"). The

Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

39. No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (a) enter the Proposed Order substantially in the form attached hereto as **Exhibit A** and (b) grant such other and further relief as may be just and proper.

Dated: September 15, 2026
Wilmington, Delaware

**BALLARD SPAHR LLP**

*/s/ Laurel D. Roglen*
Laurel D. Roglen (No. 5759)
Nicholas J. Brannick (No. 5721)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801-3034
Telephone: (302) 252-4465
E-mail: roglenl@ballardspahr.com
E-mail: brannickn@ballardspahr.com

*Counsel to the Debtor and Debtor in Possession*